UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

JAMES HILL,                                                 :
                                                            :
                              Plaintiff,                    :          10 Civ. 4981 (ARR) (JMA)
                                                            :
              -against-                                     :
                                                            :          **AMENDED COMPLAINT**
THE CITY OF NEW YORK, DEPUTY INSPECTOR                      :
COREY PEGUES, NEW YORK CITY POLICE                          :
OFFICERS JOHN DOES 1 through 5, and                         :          **JURY TRIAL DEMANDED**
SUPERVISORY POLICE OFFICER JOHN DOE 6,                      :
Individually and in their Official Capacities,             :
                                                            :
                                                            :
                              Defendants.                   :
                                                            :
---------------------------------------------------------------- X

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff James Hill ("Plaintiff" or "Mr. Hill"), by and through his undersigned

counsel, Thompson Wigdor & Gilly LLP, as and for his Amended Complaint in this

action against Defendants the City of New York ("City"), Deputy Inspector Corey

Pegues, Police Officers John Does 1 through 5, and Supervisory Police Officer John Doe

6 of the New York City Police Department ("NYPD") (collectively, "Defendants"),

hereby alleges as follows:

## PRELIMINARY STATEMENT

1.      On September 5, 2010, Mr. Hill, an African-American, left a barbeque to

accompany two female friends to their car when he was violently set upon by NYPD

officers.  Officers John Does 1 through 3 stopped Mr. Hill without any reasonable

suspicion that he had committed a crime.  Officers John Does 1 through 5, while acting

under color of law, brutally beat Mr. Hill by hitting him in the back of his head with an

object, kicking him in his face and assaulting him all over his body while he was lying on

the ground and defenseless, and did so without justification.  Officers John Does 1 through 3 then arrested Mr. Hill without probable cause to believe that he had committed a crime.  Furthermore, Officers John Does 1 through 5, Supervisory Officer John Doe 6, and Deputy Inspector Pegues detained and/or falsely imprisoned Mr. Hill without probable cause to believe that he had committed a crime.  Twelve hours later, after being beaten and taken to the hospital to have his serious injuries treated, the NYPD summarily released Mr. Hill without any charges.  Mr. Hill was never even fingerprinted or photographed while in custody.  He was also never charged with any crime.

      2.     The violence committed against Mr. Hill by members of the NYPD violated his civil rights and his safety, which those officers were sworn to uphold and protect.  Mr. Hill, therefore, brings this civil rights action for declaratory, injunctive and equitable relief, as well as monetary damages, including economic loss, compensatory damages, punitive damages, costs and attorneys' fees, to redress Defendants' unlawful practices and acts committed against him, in violation of 42 U.S.C. § 1983, the United States Constitution, including its Fourth and Fourteenth Amendments, and the laws of the State of New York.

      3.     Defendants' conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Mr. Hill and his rights, which has caused, and continues to cause, Mr. Hill to suffer great pain and suffering, substantial economic and non-economic damages, permanent harm to his professional and personal reputation, personal humiliation and degradation, severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

4.     This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, and New York State common law.

5.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

6.     Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over all state law claims.

7.     Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this district.

## PARTIES

8.     Plaintiff is a citizen of the United States, and at all material times was a resident of the State of New York, Kings County.

9.     Defendant City of New York is a municipality organized and existing under the laws of the State of New York.  At all times relevant hereto, Defendant City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel.  In addition, at all relevant times, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and of the State of New York.

3

10.     At all relevant times, Officers John Does 1 through 5 are and were duly appointed and acting officers, servants, employees and agents of the City and/or the NYPD, a municipal agency of the City.  At all relevant times, said individuals are and were acting under color of state law in the course and scope of their employment and functions as officers, agents, servants, and employees of the City.  They were also acting for, and on behalf of, and with the power and authority vested in them by the City and the NYPD, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Officers John Does 1 through 5 are sued in their official and individual capacities.

11.     At all relevant times, Supervisory Officer John Doe 6 and Deputy Inspector Pegues were duly appointed and acting supervisory officers, servants, employees and agents of the City and/or the NYPD, responsible for the supervision, discipline and control of police officers under their command.  At all relevant times, these individual Defendants are and were acting under color of state law in the course and scope of their employment and functions as supervisory officers, agents, servants and employees of the City.  They were also acting for, and on behalf of, and with the power and authority vested in them by the City and the NYPD, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Supervisory Officer John Doe 6 and Deputy Inspector Pegues are sued in their official and individual capacities.

## PROCEDURAL REQUIREMENTS

12.     Plaintiff has complied with all statutory prerequisites to filing this action.

4

13.     On September 27, 2010, within 90 days of the events giving rise to these claims, Plaintiff filed a Notice of Claim with the New York City Office of the Comptroller.  Over 30 days have elapsed since the filing of the Notice, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

14.     Plaintiff James Hill is African-American.

15.     On September 5, 2010, at or about 2:30 a.m., in the Flatbush section of Brooklyn, New York, Mr. Hill was accompanying two female friends to their car, having just left a barbeque.

16.     Before Mr. Hill and his friends could reach their car, more than a dozen officers rushed by them, towards the barbeque he had just left, pulling out their batons as they were running.

17.     One rushing officer hit a bystander's leg with his baton.

18.     Despite the fact that Mr. Hill had committed absolutely no crime, Officer John Doe 1 yelled to Hr. Hill, "Where are you going?"

19.     Officers John Does 1 through 3 then stopped Mr. Hill without reasonably suspecting Mr. Hill of having committed a crime.

20.     Officers John Does 1 and 2 grabbed Mr. Hill and pinned him against a parked car.

21.     Other officers also restrained Mr. Hill's companions.

22.     When one of Mr. Hill's companions asked for an explanation, a restraining officer ordered her to "Shut the fuck up!"

23.     Mr. Hill posed no immediate threat to the safety of the officers or others, nor did he actively resist arrest.

24.     Notwithstanding, without any provocation and with unreasonable force, Officer John Doe 3 struck Mr. Hill in the back of his head with an object.

25.     The blow caused Mr. Hill to lose consciousness momentarily as he collapsed to the ground.

26.     As Mr. Hill was lying helpless on the sidewalk, Officer John Doe 1, a White male, then kicked Mr. Hill in his face.

27.     Officers John Does 1 through 5 proceeded to brutally beat Mr. Hill.

28.     Officers John Does 1 through 5 repeatedly kicked and punched Mr. Hill about the face and body.

29.     Officers John Does 1 through 5 also struck Mr. Hill with their batons, causing further bodily injury.

30.     The blows were so hard that they were audible.

31.     Mr. Hill, trying to calm down the situation, pleaded with the officers that he had relatives who were "on the job," meaning that they worked for New York City law enforcement agencies.

32.     An officer then responded, "Fuck your family!"

33.     Officers then handcuffed Mr. Hill while he was bleeding and injured on the sidewalk.

34.     Officers John Does 1 through 3 had no probable cause to believe that Mr. Hill had committed a crime.

35.     However, Officers John Does 1 through 3 arrested Mr. Hill anyway.

36.     When Mr. Hill again made reference to the fact that some of his family members work in law enforcement, one of the assaulting officers stated, "We don't give a fuck about your family."

37.     Mr. Hill tried to read the badge numbers of some of the officers who surrounded him, causing one officer to protest, "Why are you looking at my badge number? I wasn't the one that kicked you."

38.     One officer even claimed to Mr. Hill's frightened companions that Mr. Hill was attacked because they "weren't walking fast enough."

39.     Upon information and belief, Officers John Does 1 through 5 were from the 70th Precinct in Brooklyn.

40.     However, Mr. Hill was transferred to the 67th Precinct in Brooklyn.

41.     By the time Mr. Hill arrived at the 67th Precinct, his face was badly injured, swollen and bloodied.

42.     His left eye had filled with blood from being kicked in his face and beaten by Officers John Does 1 through 5.

43.     He suffered multiple facial fractures.

44.     His left orbital was fractured.

45.     His lip was lacerated.

46.     His head was cut.

47.     Upon information and belief, it is the policies, rules, practices and/or procedures of the NYPD that any individual taken into police custody for allegedly engaging in criminal activity must be assigned an arresting officer.

48.     Yet while Mr. Hill stood in the 67th Precinct bleeding and injured, no arresting officer was assigned to his arrest, in violation of NYPD policies, rules, practices and/or procedures.

49.     In addition, when a police officer enters a police precinct with an individual in custody, the desk sergeant must enter certain information in the "command log" at the front desk, including the identity of the arresting officer, pursuant to NYPD policies, rules, practices and/or procedures.

50.     Upon information and belief, the identity of Mr. Hill's arresting officer was not written in the "command log" at the 67th Precinct, in violation of NYPD policies, rules, practices and/or procedures.

51.     Because of the seriousness of his injuries, Mr. Hill was eventually taken to Kings County Hospital by ambulance.

52.     Mr. Hill was handcuffed to his hospital bed, handcuffed while undergoing a CAT scan, and handcuffed while doctors examined him.

53.     Mr. Hill remained in the hospital for approximately twelve hours, handcuffed throughout.

54.     Doctors determined that Mr. Hill suffered fractures to his upper jaw and fractures to the bones surrounding his left eye.

55.     The assault also caused the top row of his teeth to shift.

56.     Mr. Hill was transported from the hospital back to the 67th Precinct.

57.     Supervisory Officer John Doe 6, the desk sergeant on duty at the 67th Precinct when Mr. Hill returned, and a White male, inexplicably and maliciously ordered the officer escorting Mr. Hill to "search him good."

58.   By then, Mr. Hill had already been in police custody for over twelve hours and had already been searched twice.

59.   Supervisory Officer John Doe 6 had absolutely no probable cause to believe that Mr. Hill had committed a crime.

60.   Supervisory Officer John Doe 6 also had no probable cause to have Mr. Hill searched again.

61.   Mr. Hill had his civil rights violated again when the escort officer searched him at the front desk, as Supervisory Officer John Doe 6 had ordered.

62.   Supervisory Officer John Doe 6 also showed a callous disregard for Mr. Hill's physical wellbeing, false arrest and false imprisonment.

63.   By way of example only, Supervisory Officer John Doe 6 boasted about Mr. Hill's plight by stating out loud, "Shit happens," trivializing Mr. Hill's unlawful stop, assault, unlawful arrest, unlawful search and false imprisonment.

64.   In fact, when Supervisory Officer John Doe 6 declared, "Shit happens" with respect to Mr. Hill's false arrest and false imprisonment, still no arresting officer was assigned to Mr. Hill's arrest.

65.   The failure by the NYPD to assign an arresting officer to Mr. Hill's arrest hours after he was taken into police custody was also in violation of its policies, rules, practices and/or procedures.

66.   Despite the fact that Mr. Hill had no arresting officer, Supervisory Officer John Doe 6 continued his unlawful imprisonment by ordering that he be confined to a jail cell anyway.

67.   Mr. Hill was then put into a jail cell, like a common criminal.

68.     One NYPD officer, a Black male, contritely approached Mr. Hill while Mr. Hill was in his cell, and told him, in substance, "Don't worry about it, sorry this happened," apparently referring to Mr. Hill's assault, false arrest, and false imprisonment.

69.     After Mr. Hill asked that officer to find out who was his arresting officer, because he knew he had not committed any crime, the officer left the cell area, apparently to inquire.

70.     A short while later, the same officer returned to the cell area and Mr. Hill was released from custody without any explanation.

71.     After having sustained a brutal beating at the hands of NYPD officers using deadly weapons –who attacked him without provocation or justification on a public sidewalk –after being forced to endure physical injuries, pain and suffering, humiliation and embarrassment, after a twelve hour hospital stay, during which he was forced to interact with doctors and nurses while manacled, and after being confined to a jail cell although no arresting officer could be identified and the NYPD had absolutely no probable cause to arrest and/or imprison him, Mr. Hill was finally free to go.

72.     As he walked out of the 67th Precinct, Mr. Hill was still seriously injured and in great pain, following a frightening and horrific experience during which his civil rights had been trampled upon by members of the NYPD.

73.     Mr. Hill's release was as arbitrary as his stop, his attack, his false arrest, his unlawful searches and his false imprisonment.

74.     Mr. Hill was never fingerprinted while in custody.

75.     Mr. Hill was never photographed while in custody.

76.     Mr. Hill was never given a desk appearance ticket while in custody.

77.   Mr. Hill was never charged with any crime.

78.   To date, Mr. Hill's arresting officer remains unidentified.

79.   Upon information and belief, Deputy Inspector Pegues, the commander of the 67th Precinct, had known about Mr. Hill's false imprisonment for hours before Mr. Hill was released – having told one of Mr. Hill's concerned friends, who had come to the 67th Precinct in response to his assault and false arrest, that Mr. Hill's arrest would never have happened had he been on the scene.

80.   Deputy Inspector Pegues, however, failed to release Mr. Hill, an innocent man who was badly beaten by NYPD police officers, in need of medical care, and falsely imprisoned in the precinct that he commanded.

81.   As a result of the wanton and unlawful attack, false arrest and false imprisonment of Mr. Hill, he suffered, and continues to suffer, serious and severe personal injuries, including but not limited to great pain, severe headaches, blurred vision, back pain, a left knee joint sprain, right shoulder sprain, and severe muscle soreness.  He has also suffered emotional trauma, including but not limited to, fear, embarrassment, humiliation, emotional distress, depression, anxiety, low self-esteem, loss of sleep, as well as public disgrace, and damage to his personal and professional reputations.

82.   To date, Mr. Hill has been unable to return to work because of his injuries, and consequently has also suffered loss of pay.

## AS AND FOR A FIRST CAUSE OF ACTION
### (42 U.S.C § 1983 – False Arrest and False Imprisonment)

83.   Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

84.   Defendant Officers John Does 1 through 5, Supervisory Officer John Doe 6, and Deputy Inspector Pegues wrongfully and illegally arrested, detained and/or imprisoned Plaintiff.

85.   The wrongful, unjustifiable and unlawful apprehension, arrest, detention and imprisonment of Plaintiff was carried out without Plaintiff's consent, and without probable cause or reasonable suspicion.

86.   Throughout this period, Plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, and deprived of his liberty, and falsely imprisoned.

87.   All this occurred without any fault or provocation on the part of Plaintiff.

88.   Defendant Officers John Does 1 though 5, Supervisory Officer John Doe 6, and Deputy Inspector Pegues acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as NYPD officers.  Said acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the Constitution of the United States of America.

89.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff suffered the damages hereinbefore alleged, entitling Plaintiff to an award of monetary damages and other relief.

90.   Officers John Does 1 through 5, Supervisory Officer John Doe 6, and Deputy Inspector Pegues exhibited reckless and/or callous indifference to Plaintiff's federally protected rights, including Plaintiff's constitutional right to be free from arrest

and imprisonment without probable cause, entitling Plaintiff to an award of punitive

damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 – Excessive Force)

91.     Plaintiff incorporates by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

92.     Officer John Doe 3 unlawfully struck Plaintiff on the back of his head

with an object.

93.     Officers John Does 1 through 5 then unlawfully kicked and struck Plaintiff

about the face and body, including with police batons.

94.     By using excessive force and assaulting Plaintiff, and failing to prevent

other officers from doing so, Officers John Does 1 through 5 deprived Plaintiff of his

rights, remedies, privileges, and immunities guaranteed to every citizen of the United

States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed

by the Fourth and Fourteenth Amendments to the Constitution of the United States of

America.

95.     In addition, Officers John Does 1 through 5 conspired among themselves

to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983 and by the

Fourth and Fourteenth Amendments to the Constitution of the United States of America,

and took numerous overt steps in furtherance of such conspiracy, as set forth above.

96.     Officers John Does 1 through 5 acted under pretense and color of state law

and in their individual and official capacities and within the scope of their respective

employments as NYPD officers.  Said acts by Officers John Does 1 through 5 were

beyond the scope of their jurisdiction, without authority of law, and in abuse of their

powers, and Officers John Does 1 through 5 acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the Constitution of the United States of America.

97.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged, entitling Plaintiff to an award of monetary damages and other relief.

98.     Officers John Does 1 through 5 exhibited reckless and/or callous indifference to Plaintiff's federally protected rights, including Plaintiff's constitutional right to be free from excessive force, entitling Plaintiff to an award of punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION
### (42 U.S.C. § 1983 – Failure to Intervene)

99.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

100.    Officers John Does 1 through 3 had a reasonable opportunity to prevent Plaintiff's unlawful stop.

101.    Officers John Does 1 through 3 had a reasonable opportunity to prevent Plaintiff's false arrest.

102.    Officers John Does 1 through 5 had a reasonable opportunity to prevent the unlawful use of force against Plaintiff.

103.    Officers John Does 1 through 5 had a reasonable opportunity to prevent Plaintiff's false imprisonment.

104.    Supervisory Officer John Doe 6 and Deputy Inspector Pegues had a reasonable opportunity to prevent Plaintiff's false imprisonment.

105.    Supervisory Officer John Doe 6 had a reasonable opportunity to prevent Plaintiff's unlawful search.

106.    A reasonable person in Officers John Does 1 through 5's respective positions, and in Supervisory Officer John Doe 6's and Deputy Inspector Pegues' respective positions, would know that Plaintiff's constitutional rights were being violated.

107.    Officers John Does 1 through 5, Supervisory Officer John Doe 6, and Deputy Inspector Pegues, took no reasonable steps to intervene to prevent the violation of Plaintiff's constitutional rights.

108.    As a direct and proximate result of Officers John Does 1 through 5's, Supervisory Officer John Doe 6's, and Deputy Inspector Pegues' failure to intervene, Plaintiff suffered violations of his rights under 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the Constitution of the United States of America.

109.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff suffered the damages hereinbefore alleged, entitling Plaintiff to an award of monetary damages and other relief.

110.    Officers John Does 1 through 5, Supervisory Officer John Doe 6, and Deputy Inspector Pegues exhibited reckless and/or callous indifference to Plaintiff's federally protected rights, including Plaintiff's constitutional right to be free from arrest and imprisonment without probable cause, excessive force, and/or unlawful search and seizure, entitling Plaintiff to an award of punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (42 U.S.C. § 1983 – Supervisory Liability)

111.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

112.    Supervisory Officer John Doe 6 and Deputy Inspector Pegues participated directly in the violations of Plaintiff's constitutional rights.

113.    Supervisory Officer John Doe 6 and Deputy Inspector Pegues failed to remedy the wrongs committed by their subordinates, namely Plaintiff's false arrest, unlawful search and Plaintiff's false imprisonment.

114.    Supervisory Officer John Doe 6 and Deputy Inspector Pegues exhibited gross negligence and/or deliberate indifference to Plaintiff's rights by failing to act upon information indicating that unconstitutional conduct was occurring.

115.    As a direct and proximate result of Supervisory Officer John Doe 6's and Deputy Inspector Pegues' misconduct, Plaintiff suffered violations of his rights under 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the Constitution of the United States of America.

116.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff suffered the damages hereinbefore alleged, entitling Plaintiff to an award of monetary damages and other relief.

117.    Supervisory Officer John Doe 6 and Deputy Inspector Pegues exhibited reckless and/or callous indifference to Plaintiff's federally protected rights, including Plaintiff's constitutional right to be free from arrest and imprisonment without probable cause, and/or unlawful search and seizure, entitling Plaintiff to an award of punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (42 U.S.C. § 1983 – Municipal Liability)

118.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

119.    Under color of law, Officers John Does 1 through 5 stopped Plaintiff without reasonably suspecting Plaintiff of having committed a crime, deployed excessive and unreasonable force against Plaintiff, arrested, searched and/or imprisoned Plaintiff without probable cause to believe that Plaintiff had committed a crime, although Officers John Does 1 through 5 knew that said misconduct would jeopardize Plaintiff's liberty, well-being, safety and constitutional rights.

120.    Under color of law, Supervisory Officer John Doe 6 and Deputy Inspector Pegues imprisoned Plaintiff without probable cause to believe that Plaintiff had committed a crime, although Supervisory Officer John Doe 6 and Deputy Inspector Pegues knew that said misconduct would jeopardize Plaintiff's liberty, well-being, safety and constitutional rights.

121.    Upon information and belief, it is the customs, policies, rules, practices, and/or procedures of the City and the NYPD to stop citizens of color without reasonably suspecting them of having committed a crime.

122.    In fact, a recent study conducted by a Columbia Law School professor found that NYPD police officers stopped and questioned people, mostly people of color, without the legal justification for doing so, tens of thousands of times from 2004 through 2009.

123.    Additionally, the City, pursuant to policies, customs, practices, and procedures, inadequately screens, hires, retains, trains, promotes, and supervises its employees serving as police officers, causing the violation of Plaintiff's rights as described herein.  As a result of the City's failure to properly recruit, screen, train, discipline, and supervise its officers, including Officers John Does 1 through 5,

Supervisory Officer John Doe 6 and Deputy Inspector Pegues, the City has tacitly authorized, ratified, and has been deliberately indifferent to, the unconstitutional acts and conduct complained of herein.

124.    The existence of these unconstitutional customs and policies can be inferred from the repeated occurrences of similar illegal conduct, as documented in the numerous civil rights actions filed against the City in the state and federal courts.

125.    The foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD constitute deliberate indifference to the safety, well-being and constitutional rights of Plaintiff.

126.    As a consequence of the City's systemic practice, pattern and custom of intentionally promoting and supporting NYPD officers' and officials' violations of 42 U.S.C. § 1983, Plaintiff was deprived of his freedom, and physically and emotionally harmed.

127.    The foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD were the direct and proximate cause of the constitutional violations Plaintiff suffered.

128.    As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD, Plaintiff was unlawfully stopped, assaulted and battered, arrested, searched and imprisoned on the basis of his race and/or color.

129.    Officers John Does 1 through 5, Supervisory Officer John Doe 6 and Deputy Inspector Pegues, collectively and individually, while acting under color of state law, were directly and actively involved in violating Plaintiff's constitutional rights.

130.   As a direct and proximate result of the City's illegal customs, policies, practices and procedures, Plaintiff suffered violations of his rights under 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the Constitution of the United States of America.

131.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff suffered the damages hereinbefore alleged, entitling Plaintiff to an award of monetary damages and other relief.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (Battery)

132.   Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

133.   Officers John Does 1 through 5, acting within the scope of their employment, intentionally, willfully, and maliciously battered Plaintiff, when they, in a hostile and/or offensive manner, pushed, punched, and kicked Plaintiff without his consent and with the intention of causing harmful and/or offensive bodily contact to the Plaintiff and caused such battery.

134.   Defendant City and its officers, agents, servants, and employees were responsible for Plaintiff's battery.  Defendant City, as employer of Officers John Does 1 through 5, is responsible for their wrongdoing under the doctrine of respondeat superior.

135.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

136.   Officers John Does 1 through 5's conduct was wanton, malicious and/or cruel, entitling Plaintiff to an award of punitive damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Assault)

137.   Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

138.   Officers John Does 1 through 5, acting within the scope of their employment, intentionally, willfully, and maliciously assaulted Plaintiff in that they had the real or apparent ability to cause imminent harmful and/or offensive bodily contact and intentionally did violent and/or menacing acts which threatened such contact to the Plaintiff, and that such acts caused apprehension of such contact in the Plaintiff.

139.   Defendant City and its officers, agents, servants, and employees were responsible for the assaults on Plaintiff.  Defendant City, as employer of Officers John Does 1 through 5, is responsible for their wrongdoing under the doctrine of respondeat superior.

140.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged, entitling Plaintiff to an award of monetary damages and other relief.

141.   Officers John Does 1 through 5's conduct was wanton, malicious and/or cruel, entitling Plaintiff to an award of punitive damages.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (False Arrest and False Imprisonment in Violation of New York State Common Law)

142.   Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

143.   On September 5, 2010, Officers John Does 1 through 5, Supervisory Officer John Doe 6, and Deputy Inspector Pegues intentionally, falsely, unlawfully and

wrongfully, with force, without probable cause, and without Plaintiff's consent and against his will, falsely arrested and/or falsely imprisoned Plaintiff.

144.   Plaintiff was conscious of the confinement.

145.   Plaintiff did not consent to the confinement.

146.   Plaintiff's confinement was not otherwise privileged because Officers John Does 1 through 5, Supervisory Officer John Doe 6, and Deputy Inspector Pegues had no probable cause to believe that Plaintiff had committed a crime when they deprived him of his liberty for an unreasonable time.

147.   As a direct and proximate result of Plaintiff's false arrest and imprisonment detailed above, Plaintiff sustained the damages hereinbefore alleged, entitling Plaintiff to an award of monetary damages and other relief.

148.   Officers John Does 1 through 5, Supervisory Officer John Doe 6, and Deputy Inspector Pegues acted wantonly, willfully, maliciously and/or cruelly in falsely arresting and/or falsely imprisoning Plaintiff, entitling Plaintiff to an award of punitive damages.

**AS AND FOR A NINETH CAUSE OF ACTION**
**(Intentional Infliction of Emotional Distress)**

149.   Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

150.   Officers John Does 1 through 5 brutally assaulted and battered Plaintiff with their fists, their feet, and deadly weapons, despite the fact that Plaintiff had committed no crime, and while Plaintiff was completely helpless to defend himself, on a public street.

151.    Officers John Does 1 through 5's conduct was extreme and outrageous so as to exceed the bounds of decency in a civilized society.

152.    Officers John Does 1 through 5 intended or disregarded a substantial probability of causing Plaintiff severe emotional distress.

153.    As a direct and proximate result of Officers John Does 1 through 5's misconduct, which was so outrageous in character and so extreme in degree as to exceed all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community, Plaintiff suffered severe emotional distress.  He has been unable to resume his work, he has suffered, and continues to suffer great pain, depression, humiliation, embarrassment, disgrace, stress and anxiety, loss of self-esteem and self-confidence, and loss of sleep, to the extent that Plaintiff has sought counseling by a mental health professional, and for which Plaintiff is entitled to an award of monetary damages and other relief.

154.    Officer John Does 1 through 5's extreme and outrageous conduct was wanton, willful, malicious and/or cruel, entitling Plaintiff to an award of punitive damages.

## AS AND FOR A TENTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)

155.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

156.    Officers John Does 1 through 5 brutally assaulted and battered Plaintiff with their fists, their feet, and deadly weapons, while Plaintiff was completely helpless to defend himself, on a public street.

157.    Officers John Does 1 through 5, Supervisory Officer John Doe 6, and Deputy Inspector Pegues unlawfully imprisoned Plaintiff in full view of strangers and friends.

158.    Officers John Does 1 through 5's, Supervisory Officer John Doe 6's, and Deputy Inspector Pegues' conduct created an unreasonable and foreseeable risk of causing Plaintiff emotional distress by humiliating, embarrassing, unreasonably endangering Plaintiff and causing Plaintiff to fear for his safety.

159.    As a direct and proximate result of Officers John Does 1 through 5's, Supervisory Officer John Doe 6's, and Deputy Inspector Pegues' negligence,  Plaintiff suffered severe emotional distress, has been unable to resume his work, and suffered, and continues to suffer, from depression, humiliation, embarrassment, disgrace, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, and loss of sleep, to the extent that Plaintiff has sought counseling by a mental health professional, and for which Plaintiff is entitled to an award of monetary damages and other relief.

160.    Officers John Does 1 through 5's, Supervisory Officer John Doe 6's, and Deputy Inspector Pegues' conduct amounted to utter recklessness, was so wantonly negligent as to be the equivalent of a conscious disregard for Plaintiff's rights, demonstrated a high degree of moral culpability, was designed to oppress and injure, evinced a conscious indifference to the effects of their acts, was committed without regard to the rights of Plaintiff or of people in general, and involved wrongdoing to the public, entitling Plaintiff to an award of punitive damages.

## AS AND FOR AN ELEVANTH CAUSE OF ACTION
**(Negligence)**

161.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

162.    Defendant City had a duty under 42 U.S.C. § 1983, as well as under the Fourth and Fourteenth Amendments, under New York State common law, and their own policies, rules, practices, and/or procedures, to prevent and/or cease the false arrest, false imprisonment, unlawful searches, and prevent other unlawful acts that were committed against Plaintiff.

163.    By inflicting and failing to prevent the above stated abuses suffered by Plaintiff, Officers John Does 1 through 5, Supervisory Officer John Doe 6, and Deputy Inspector Pegues violated their duty to Plaintiff and acted unreasonably, recklessly and negligently.

164.    Officers John Does 1 through 5, Supervisory Officer John Doe 6, and Deputy Inspector Pegues failed to exercise the slightest amount of due care to protect Plaintiff's civil and constitutional rights against illegal stops, the use of excessive and unreasonable force, false arrest, and/or unlawful search and seizure, as guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States of America.

165.    As a direct and proximate result of the negligence described herein and attributable to the City and to Officers John Does 1 through 5, Supervisory Officer John Doe 6, and Deputy Inspector Pegues, Plaintiff sustained the damages hereinbefore alleged, entitling Plaintiff to an award of monetary damages and other relief.

166.    Officers John Does 1 through 5's, Supervisory Officer John Doe 6's, and Deputy Inspector Pegues' conduct amounted to utter recklessness, was so wantonly

negligent as to be the equivalent of a conscious disregard for Plaintiff's rights, demonstrated a high degree of moral culpability, was designed to oppress and injure, evinced a conscious indifference to the effects of their acts, was committed without regard to the rights of Plaintiff or of people in general, and involved wrongdoing to the public, entitling Plaintiff to an award of punitive damages.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### (Negligent Hiring, Retention and Supervision)

167.   Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

168.   Upon information and belief, Defendant City, through the NYPD, owed a duty of care to Plaintiff to prevent the physical and mental abuse Plaintiff sustained.

169.   Upon information and belief, Defendant City, through the NYPD, owed a duty of care to Plaintiff because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that an injury to Plaintiff or to those in a like situation would probably result from this conduct.

170.   Upon information and belief, Officers John Does 1 through 5 were unfit and incompetent for their positions.

171.   Upon information and belief, Defendant City knew or should have known through the exercise of reasonable diligence that Officers John Does 1 through 5 were potentially dangerous.

172.   In addition, the City knew or should have known through the exercise of reasonable diligence that the officers who responded to the scene of the barbeque near where Plaintiff was attacked and falsely arrested, including Officers John Does 1 through 5, as well as Supervisory Officer John Doe 6, and Deputy Inspector Pegues, would

engage in conduct that led to the violations of Plaintiff's constitutional rights and other abuses that he suffered.

173.   The City's negligence in hiring and retaining Officers John Does 1 through 5, Supervisory Officer John Doe 6, and Deputy Inspector Pegues directly and proximately caused Plaintiff's injuries.

174.   As a direct and proximate result of the negligent hiring described herein, Plaintiff has suffered, and continues to suffer great pain, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which Plaintiff is entitled to an award of monetary damages and other relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A.   A declaratory judgment that Defendants willfully violated Plaintiff's rights secured by the laws of the United States of America and the State of New York.

B.   An injunction and order to enjoin Defendants from continuing to violate the laws of the United States of America and the State of New York, as alleged herein, and any such other injunctive relief as may be appropriate to prevent future violations of said federal and state laws.

C.   An award of damages to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputations.

D.     An award of damages in an amount of no less than FIVE MILLION DOLLARS ($5,000,000.00), plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for his mental anguish, depression, anxiety, humiliation, embarrassment, stress, emotional pain and suffering, emotional distress and physical injuries.

E.     An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest.

F.     An award of punitive damages of no less than TEN MILLION DOLLARS ($10,000,000.00).

G.     An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees under 42 U.S.C. § 1988.

H.     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: October 29, 2010
      New York, New York

                  Respectfully Submitted,

                  THOMPSON WIGDOR & GILLY LLP

                  By:_____
                      Kenneth P. Thompson (KT-6026)
                      Raymond Audain (RA- 0935)

                  85 Fifth Avenue, Fifth Floor
                  New York, NY  5003
                  Telephone:  (212) 257-6800
                  Facsimile:  (212) 257-6845
                  kthompson@twglaw.com
                  raudain@twglaw.com
                  *COUNSEL FOR PLAINTIFF*