

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

85 Fifth Avenue
New York, NY 10003
Tel 212.257.6800
Fax 212.257.6845
www.twglaw.com

**Kenneth P. Thompson**
kthompson@twglaw.com

April 29, 2011

**VIA ECF**

The Honorable Joan M. Azrack
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    James Hill v. City of New York, et al., 10 Civ. 4981 (ARR)(JMA)

Dear Judge Azrack:

As Your Honor is aware, we represent Plaintiff James Hill in the above referenced matter. Having conferred with and received permission to do so from your Law Clerk pursuant to Your Honor's Individual Rules, we write to respectfully respond to the City of New York's letter filed with the Court last night. As explained more fully below, the City's requests to be relieved of its obligation to respond to Plaintiff's pending discovery requests until the Court resolves "the appropriateness of said discovery requests" and for a stay are totally baseless.

Instead of abiding by their obligations under the Federal Rules of Civil Procedure, the City has brought discovery to crawl by choosing to encumber this litigation with unnecessary delays and disputes. In fact, when we spoke to opposing counsel just the other day regarding the City's discovery responses, opposing counsel stated that she wanted more time to respond simply because she was too busy working on a class action in another case. Thus, this self-absolving, last minute letter filed with the Court after-hours – the timing of which was apparently designed to give Plaintiff's counsel very little, if any, time to adequately respond before this morning's scheduled telephone conference with the Court – is the latest example of an unfortunate pattern. Rather than attempting to resolve any discovery issues in good faith, the City unnecessarily burdens the Court with a letter that seeks to obscure its failure to comply with its discovery obligations.

As the Supreme Court reminded us in Swierkiewicz v. Sorema N.A., litigation under the Federal Rules "relies on liberal discovery rules." 534 U.S. 506, 512 (2002). "Thus, it is now beyond dispute that '[b]road discovery is a cornerstone of the litigation process contemplated by the Federal Rules of Civil Procedure.' The Rules contemplate a minimal burden to bringing a claim;

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

The Honorable Joan M. Azrack
April 29, 2011
Page 2 of 5

that claim is then fleshed out through vigorous and expansive discovery." <u>Zubalake v. UBS Warburg LLC</u>, 217 F.R.D. 309, 311 (S.D.N.Y. 2003) (internal quotation omitted).  These principles seem to be completely lost on the City.

The City complains that Plaintiff served a second request for the production of documents "without notice to the Court."  However, the Court never restricted Plaintiff's ability to serve more document requests, the City never sought any such restriction and it never complained about the fact that Plaintiff served a second set of relevant document requests until Wednesday of this week, 32 days after they were served.

The City's claim that the pending document requests are "largely irrelevant" is simply ridiculous.  Plaintiff's discovery requests are narrowly tailored to reach information that is central to his ability to prove his allegations.  For example, among the documents we seek is an unredacted version of Captain J.D. Schiff's memorandum and/or report to the Chief of the Department, dated September 5, 2010 (hereinafter, "Captain Schiff's Memo" or September 5, 2010, Memo") (attached as Exhibit A), including every document upon which Captain Schiff relied or claims to have relied to prepare the September 5, 2010, Memo.  Even the City cannot deny that Captain Schiff's Memo is a critical document in this case.  Moreover, Plaintiff also seeks

- All documents and/or ESI relating to Captain Schiff's investigation into the location of Plaintiff's arrest, referred to in paragraph 3 of document NYC7 as "[a] subsequent investigation," including but not limited to any notes taken by and/or at the direction of Captain Schiff, and any memos written by and/or at the direction of Captain Schiff. (Doc. Req. No. 7, Second Set of Document Requests.)  And

- All documents and/or ESI concerning Defendants' Eleventh Affirmative Defense that "Plaintiff provoked any incident" prior to his arrest on September 5, 2010. (Doc. Req. No. 60, Second Set of Document Requests.)

Again, the information contained in any documents responsive to these requests go to the very heart of Plaintiff's ability to discover who was responsible for the outrageous acts that were committed against him on September 5, 2010, and therefore is clearly relevant to Plaintiff's claims, or, at a very minimum, is reasonably calculated to lead to the discovery or relevant information.

Strangely, the City also objects to certain requests on the grounds that Plaintiff has maintained that he was not arrested "outside of 426 East 26th Street," presumably where the City believes

# Thompson Wigdor & Gilly LLP ATTORNEYS AND COUNSELORS AT LAW

The Honorable Joan M. Azrack
April 29, 2011
Page 3 of 5

the barbeque took place.[1] However, what the City completely ignores is that they represented to the Court that Plaintiff was arrested at the barbeque. Therefore, apparently, there are members of the NYPD who claim that Plaintiff was arrested at the barbeque, and not, as Captain Schiff stated in his report, "a good distance away." (See Exhibit A, NYC7.) Therefore, Plaintiff is entitled to review the names of the police officers who responded to the 10-13 that night to see if he recognizes any of the names from the police name tags that he saw when he was stopped, beaten without cause and falsely arrested.[2]

The City also objects to Plaintiff's request for all video surveillance showing the front desk and/or any areas near the front desk of the 67th Precinct between 12:00 a.m. and 8 a.m. on September 5, 2010. The City claims that "there seems to be no basis for this request" since "Plaintiff is not alleging that he was subjected to excessive force at the 67th Precinct." However, Plaintiff's Online Booking Sheet, which is attached as Exhibit B, states that Plaintiff's physical condition was "apparently normal." As the medical records from Kings County Hospital and photographs taken of Plaintiff's injuries that night show, that statement by Sergeant Vasiliy Ignatov, who claims to have been Plaintiff's arresting officer, was false. Video surveillance will likely show how Plaintiff's injuries appeared when Sgt. Ignatov saw him at the front desk on September 5, 2010. Furthermore, Defendant Deputy Inspector Corey Pegues also claims that he did not start working until 11:10 a.m. on the morning of September 5, 2010 (when Plaintiff was still at Kings County Hospital). However, credible witnesses maintain that Defendant Pegues was in the 67th Precinct and near the front desk when Plaintiff was in the precinct with visible injuries and before he was taken to the hospital. Accordingly, video surveillance may also show whether Defendant Pegues was in the 67th Precinct before 11:10 a.m. on September 5, 2010.

Finally, the City repeats throughout its discovery responses that it is continuing to search for such basic information as the names of those officers who escorted Plaintiff between Kings County Hospital and the 67th Precinct, the identity of a person with knowledge that there was probable cause for Plaintiff's arrest and imprisonment, or the identity of any NYPD member who filled out any part of the medical treatment of prisoner form that Captain Schiff claims he relied upon to prepare his memo. It is simply inconceivable that – 236 days after Plaintiff was stopped unjustly, assaulted by members of the NYPD, and falsely arrested and imprisoned without any probable cause – the City is still continuing an investigation into such simple and readily

---

[1] Upon information and belief, the barbeque actually took place at a home located at 455 East 26th Street.

[2] The City's contention that Plaintiff apparently "intends to move to depose these, at least 120 officers in order to ascertain whether they are in possession of any relevant information" is just plain ridiculous.

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

The Honorable Joan M. Azrack
April 29, 2011
Page 4 of 5

obtainable information. Accordingly, Plaintiff cannot help but question the quality of this so-called "investigation."

Pursuant to the City's deficient responses, and at the Court's invitation, on April 4, 2011, Plaintiff sent the City a deficiencies letter in an effort to resolve these outstanding discovery disputes without having to further involve the Court. That deficiencies letter went completely unacknowledged by opposing counsel for weeks. In fact, it was not until we contacted opposing counsel on April 20, 2011, proposing a telephonic meet and confer about the items listed in our deficiencies letter, that the Parties began to discuss their discovery disputes. The City never sought to meet and confer in good faith regarding any of the discovery demands it now claims to take issue with. Unfortunately, during the resulting, April 27, 2011, telephonic conference the City refused to engage in a meaningful conversation. Instead, it simply parroted the objections contained in its deficient responses to Plaintiff's first document requests and interrogatories.

Furthermore, while Defendants often invoked privileges and protections such as the law enforcement privilege, N.Y. CPL Law § 160.50,[3] and the attorney-client privilege/work product privilege, they have neglected to provide any privilege log. In fact, when, during the April 27, 2011, telephone conference, Plaintiff inquired as to the status of any privilege log, opposing counsel simply refused to produce one. As the Court well knows, "when a party withholds information that is otherwise discoverable on grounds of a privilege or protection, the party must expressly invoke the privilege or protection asserted and describe the documents withheld. The purpose of this requirement is to assist the party seeking discovery – and, where applicable, the Court – in determining whether the privilege or protection has been properly invoked." Bellinger v. Astrue, 2011 WL 317836, at *2 (E.D.N.Y. Jan. 31, 2011).

The City has also failed to abide by its discovery obligations in other ways. Instead of filing timely responses and objections to the discovery requests with which they take such issue, they have repeatedly asked for last minute enlargements of time to respond. When the City requested a two week enlargement of time to respond Plaintiff's first requests to admit, Plaintiff readily extended the City that courtesy. But when the City requested a two week extension to respond to Plaintiff's Second Request for Production of Documents *on the very day they were due,* Plaintiff had no choice but to limit any enlargement of time to four days in order to have sufficient time to review them before our scheduled Court conference of May 5, 2011. Otherwise, the two week

---

[3] The Court invited the City to brief the relevance of N.Y. CPL Law § 160.50, as it appears to be completely inapplicable to this case. The City agreed to brief the issue, but never did so. When Plaintiff's counsel recently learned that the City had decided to not file a brief pursuant to § 160.50, we asked the City to produce any documents that it had withheld on that ground, but the City refuses to do so. Accordingly, Plaintiff will move for an order requiring the City to turn over all relevant documents the City has refused to produce by virtue of § 160.50.

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

The Honorable Joan M. Azrack
April 29, 2011
Page 5 of 5

extension the City sought would have deprived Plaintiff of the opportunity to take up any issues pertaining to Defendant's production during the Court's long scheduled status conference, which would not have become due until the following week. Instead of endeavoring to respond to Plaintiff's second document requests within the 34 days Plaintiff would have allotted the City, they dismissively informed Plaintiff that they would seek an extension with the Court.

Plaintiff's efforts to date and his document requests reflect his best efforts to identify those officers who violated his civil rights on September 5, 2010. Plaintiff's efforts are also a consequence of the City's apparent aversion to discovering the truth about what happened on the terrible night in question. That aversion is made particular clear by the City's renewed desperate and baseless effort to stay discovery in this case pending resolution of Civilian Complaint Review Board and Internal Affairs investigations which may last into 2012. This issue has already been ruled upon and the City's request for a stay was rejected.

Furthermore, the City's claim that Plaintiff would not be prejudiced should the Court grant their request, since the statute of limitations extends to 2013, is patently false. Here, Plaintiff, an innocent man who was stopped, violently beaten and falsely arrested by members of the NYPD, has a right to have his day in Court as soon as possible, particularly before many of the police officers who responded to the scene that night are transferred to other precincts, memories fade, and more evidence – like Plaintiff's medical treatment of prisoner form – mysteriously go missing. If a stay were imposed, great prejudice would be suffered by this innocent man and immeasurable damage would be done to one of the core objectives of the Federal Court system, namely, the speedy resolution of disputes.

In the end, Plaintiff's discovery requests are narrowly tailored to reach matters that are relevant to his claims, and it was incumbent upon the City to respond to Plaintiff's discovery requests in a manner amenable to discussion and resolution before wasting the Court's time with its baseless letter. Instead, the City has demonstrated a cavalier disregard towards its responsibilities under the Federal Rules, such that this case is barely further along than it was when we last met with Your Honor, more than a month ago.

Sincerely,

Kenneth P. Thompson